# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SANTOSH REDDY MANNEY, et al.** | : | |
| | : | **CIVIL ACTION** |
| v. | : | No. 24-760 |
| | : | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY** | : | |
| | : | |

**McHUGH, J.**                                                                                              **May 29, 2025**

## MEMORANDUM

    This is an action challenging a federal agency's revocation and denial of H-1B visas for four foreign nationals. H-1B visas confer legal, non-immigrant status to individuals to work in specialty occupations for specific employers. In late 2023, U.S. Citizenship and Immigration Services revoked or denied Plaintiffs' assigned visas due to alleged fraud by their prospective employers in the visa application process. In 2024, Plaintiffs sought a preliminary injunction, contending that the government lacked a legal basis on which to revoke or deny both the visas and their authorizations to remain in the United States. Although the Plaintiffs were, by all accounts, blameless for the revocations and denials, I denied the motion for a preliminary injunction, concluding that Plaintiffs were unlikely to succeed on the merits of their claims.

    One of the claims remains ripe, and the parties have now filed cross motions for summary judgment. The relevant facts and the law remain unchanged since my denial of injunctive relief,[1] and I will now grant the agency's motion for summary judgment.

---

[1] Two district courts have cited my earlier opinion with approval – *LeadIC Design USA LLC v. United States Citizenship and Immigr. Servs.*, No. 23-6590, 2025 WL 458246 (N.D. Cal. Feb. 11, 2025) and *Narambatla v. United States Dep't of Homeland Security*, No. 23-1275, 2025 WL 754530 (W.D. Wash. Mar. 10, 2025) – and Plaintiffs point to no other decision that has adopted their view of the statute and regulations at issue here.

I.    **Relevant Background**

Plaintiffs Santosh Reddy Manney, Minaxiben Bheekhubhai Solanki, Pavan Kumar Pinagadi, and Pradeepkumar Udu are microbiologists from India. All four received or expected to receive H-1B visa "cap numbers" to relocate and work in the United States in 2022 or 2023.

Foreign nationals seeking to work in the United States cannot directly apply for or receive H-1B visas. Instead, U.S. employers agree to hire specific foreign nationals and apply for H-1B visas on their behalf. If granted, visas are then issued to the employer, permitting them to employ the specific individuals within the U.S. A foreign national employee is thus a beneficiary of an H-1B visa, while their employer is its actual recipient.

Because the number of H-1B visas issued annually is capped by statute, employers apply for the visas in a multi-step "lottery" process. The relevant phases of the process can be summarized as follows:

**Registration.** An employer first submits a "registration" for a prospective foreign national employee. The registration includes information about the employer and the foreign national, as well as an attestation from the employer that they will submit a visa petition if their registration is selected in the lottery. Since the start of fiscal year 2023, employers must also attest that they have not coordinated with others to submit multiple registrations for the same foreign national to unfairly increase their chances of selection.

**Lottery.** U.S. Citizenship and Immigration Services holds a visa lottery to select registrations from among all those submitted, up to the statutory cap.

**Petition.** If an employer's registration is selected from the lottery, the employer submits a visa petition for that specific employee.

2

**Visa and Cap Number.** Lastly, if a petition is approved, a visa is conferred to the employer to employ the specific foreign national. The foreign national also receives a "cap number," signifying that they are counted toward the statutory cap of H-1B visas. With a cap number and approved visa, the individual can lawfully reside in the U.S. to work for the employer as a "non-immigrant alien."

Plaintiffs' visas were obtained or sought on their behalf by two Pennsylvania-based companies: Penn Life Sciences, LLC and KVK-Tech, Inc. Penn Life successfully obtained visas to employ Manney, Solanki, and Pinagadi, and these Plaintiffs were each assigned cap numbers. KVK applied for a visa for Udu, but the application was ultimately denied.

In late 2023, U.S. Citizenship and Immigration Services[2] (USCIS or "the agency") determined that Penn Life and KVK committed "fraud" in their registrations for Plaintiffs' visas. The employers attested under penalty of perjury that they had "not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in [their] submission." Manney Revocation Letter, Ex. 5 at 3, ECF 10-7; *see also* USCIS Letters, Exs. 6-8. But according to the agency, Penn Life and KVK were actually "related entities" who "worked together to [] submit multiple registrations to unfairly increase chances of selection" of the Plaintiffs' registrations.[3] Manney Revocation Letter, Ex. 5 at 4-5. The agency therefore revoked the employers' H-1B petitions, pursuant to 8 C.F.R. § 214.2(h)(11)(iii)(A)(2):

> The director shall send to the petitioner a notice of intent to revoke the petition in relevant part if he or she finds that . . . [t]he statement of facts contained in the

---

[2] USCIS is a subsidiary agency of the U.S. Department of Homeland Security (DHS).

[3] USCIS premised this determination on several findings, including that: (1) the companies share the same CEO and heads of major departments; (2) the companies listed the same phone number and email address on registrations; and (3) Penn Life and KVK submitted 69 registrations for the same foreign nationals, out of 70 and 72 total submissions, respectively. *See* Manney Revocation Letter, Ex. 5 at 4-5.

3

> petition [or] H-1B registration (if applicable) . . . was not true and correct, inaccurate, fraudulent, or misrepresented a material fact, including if the attestations on the registration are determined to be false.

Revocation of the H-1B petitions also meant the revocation of the visas for Manney, Solanki, and Pinagadi and the denial of the petition for Udu. *See* USCIS Letters, Exs. 6-8; Manney Revocation Letter, Ex. 5 at 1 ("USCIS may revoke an H-1B petition at any time, even after the expiration of the petition, subject to the conditions set forth in [8 C.F.R. § 214.2(h)(11)(iii)(A)].").

Additionally, because the agency determined that the employers committed fraud in registering for and obtaining the H-1B visas – and the visas were now revoked – the agency also revoked the cap numbers of Manney, Solanki, and Pinagadi. The agency made these revocations pursuant to 8 U.S.C. § 1184(g)(3) (also codified at INA § 214(g)(3)), which states in relevant part:

> If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of aliens who may be issued visas or otherwise provided such status . . . .

In February 2024, Plaintiffs filed suit, alleging that the agency's actions violated the Administrative Procedure Act (APA). Plaintiffs argued that the agency could not require Penn Life or KVK to attest that they had not worked with other entities to unfairly increase the chances that their petitions would be selected because the agency did not undergo "notice and comment" rulemaking before creating this requirement (Count I).[4] Plaintiffs also maintained that the agency could not revoke their cap numbers without finding that the Plaintiffs personally committed fraud or made a material misrepresentation to obtain them (Count III).[5]

---

[4] Plaintiffs refer to this requirement as the "anti-collusion rule," while the agency calls it the "attestation requirement." This opinion will split the difference and refer to it throughout as the "collusion attestation."

[5] Plaintiffs withdrew Count II during the preliminary injunction hearing. *See* Memorandum, ECF 19 at 5.

Plaintiffs then moved for a preliminary injunction, seeking to enjoin the agency from enforcing the collusion attestation and to stop the accrual of time toward the Plaintiffs' "unlawful presence" in the United States. On May 30, following oral argument, I denied Plaintiffs' motion, holding that Plaintiffs were unlikely to succeed on the merits of their claims. As to Count I, I concluded that the agency could properly require employers to attest that they did not collude with others in the H-1B registration process without undergoing notice and comment rulemaking. As to Count III, I concluded that the agency had the authority to revoke a foreign national's assigned H-1B cap number even if the foreign national did not personally commit fraud or make a material misrepresentation in the visa process.

In the absence of further filings by the parties, I ordered Plaintiffs' counsel to notify the Court as to whether they still intended to prosecute the case. ECF 21, 22. Before me now are the parties' cross motions for summary judgment. ECF 24, 31.

## II.  Standard of Review

For review of agency action under the APA, summary judgment is the proper mechanism by which a district court determines "as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Uddin v. Mayorkas*, 862 F. Supp. 2d 391, 399 (E.D. Pa. May 15, 2012) (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). A district court will strike down agency actions that are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or (4) without observance of procedure required

by law." *See* 5 U.S.C. § 706(2)(A)-(D); *see also La. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 669 (3d Cir. 2014).

The arbitrary and capricious standard of review is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (quotations omitted). An action is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

In determining "whether an agency has acted within its statutory authority," however, "[c]ourts must exercise their independent judgment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).

### III. Discussion

#### A. Standing

A few months after I denied preliminary relief, Plaintiffs Manney and Solanki obtained H-1B visas and were issued cap numbers.[6] ECF 31-1 at 5-6, 11-12. Accordingly, their claims must be dismissed as moot. *See United States v. Gov't of V.I.*, 363 F.3d 276, 284-85 (3d Cir. 2004) ("If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it"); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (there

---

[6] Manney's H-1B visa was approved on August 9, 2024; Solanki's was approved on September 6, 2024. The Approval Notices identify Penn Life as the petitioner-employer for both Manney and Solanki. ECF 31-1 at 5-6, 11-12.

must be a case or controversy "at all stages of review, not merely at the time the complaint is filed."). Previously, I held that Plaintiff Udu lacks standing for his cap number revocation claim because the agency never approved KVK's visa petition and he was never issued a cap number. *See* Memorandum, ECF 19 at 12 (Plaintiff Udu "lacks standing for Count III because he has not suffered an injury in fact.").

That leaves only Plaintiff Pinagadi, who, on September 11, 2024, obtained an F-1 student visa.[7] ECF 31-1 at 8-9. Because Mr. Pinagadi's acquisition of F-1 nonimmigrant status does not redress his asserted injury – the agency's revocation of his H-1B status – he continues to have standing to bring this action.

### B. The collusion attestation is not subject to notice and comment rulemaking.

Count I alleges a violation of the APA's "notice and comment" rulemaking process. *See* 5 U.S.C. § 553. Plaintiffs maintain that the "rule" could not be enforced against Penn Life or KVK because the agency did not engage in this process before imposing the collusion attestation on employers, with the result that the visas for Plaintiffs could not be denied or revoked on this basis.

The controlling question presented by Count I is whether the collusion attestation is "substantive" (sometimes called "legislative"), as the Plaintiffs claim, or "interpretive" as the agency claims. "Legislative rules, which have the force of law, impose new duties upon the regulated party. Interpretive rules, on the other hand, seek only to interpret language already in properly issued regulations. Interpretive rules do not add language to or amend language in the

---

[7] The agency's website explains that an F-1 student visa "allows you to enter the United States as a full-time student at an accredited college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program. You must be enrolled in a program or course of study that culminates in a degree, diploma, or certificate and your school must be authorized by the U.S. government to accept foreign students." *See* USCIS, Students and Employment, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment (last visited May 14, 2025).

statute, but simply state what the administrative agency thinks the statute means, and only remind affected parties of existing duties." *Pa. Dep't of Hum. Servs. v. United States*, 897 F.3d 497, 505 (3d Cir. 2018) (cleaned up). Substantive or legislative rules trigger the notice and comment process, but interpretive rules do not. *Id.*

Plaintiffs do not address this issue in their motion for summary judgment, electing instead to incorporate the arguments from their motion for preliminary relief. ECF 24-1 at 1 n.1. Having already considered these arguments at the preliminary injunction stage, I now reaffirm my holding that the collusion attestation is an interpretive rule, not subject to notice and comment rulemaking.

Plaintiffs contend that the collusion attestation is a substantive rule because it ushered in a new prohibition against coordinating with other entities to increase the chances of selection in the lottery by registering for the same foreign nationals.[8] In other words, Plaintiffs maintain that, before this requirement, "collusion" between at least some entities in the H-1B registration process

---

[8] The collusion attestation is comprised of two components: (1) a drop-down box on the agency's website, and (2) the actual attestation employers must sign to submit a registration. The drop-down box reads:

> When you submit your registration(s), you must attest, under penalty of perjury, that all of the information contained in the submission is complete, true, and correct. The attestation that is required before submission indicates, **"I further certify that this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is being submitted, have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission."** If we find that this attestation was not true and correct (for example, that a company worked with another entity to submit multiple registrations for the same beneficiary to unfairly increase chances of selection for that beneficiary), we will deny or revoke the petition based on a registration with a false attestation in accordance with the regulatory language at 8 CFR 214.2(h)(10)(ii) and 8 CFR 214.2(h)(11)(iii)(A)(2). Furthermore, we may also refer the individual or entity who submitted a false attestation to appropriate federal law enforcement agencies for investigation and further action as appropriate.

The emphasized text quotes the attestation. *See* USCIS, H-1B Electronic Registration Process, https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations/h-1b-electronic-registration-process (last visited May 14, 2025).

was permitted. *See* ECF 10-1 at 21 ("[T]he agency was informed of the possibility of collusion, and explicitly rejected a prohibition on the practice . . .").

The government responds that both collusion and fraud have long been proscribed in the visa process by existing laws and regulations, and as such, the collusion attestation merely reminds employers of an existing duty. They point to 8 C.F.R. § 214.2(h)(2)(i)(G), which USCIS adopted in 2008:

> If USCIS believes that related entities (such as a parent company, subsidiary, or affiliate) may not have a legitimate business need to file more than one H-1B petition on behalf of the same alien . . . USCIS may issue a request for additional evidence or notice of intent to deny, or notice of intent to revoke each petition. If any of the related entities fail to demonstrate a legitimate business need to file an H-1B petition on behalf of the same alien, all petitions filed on that alien's behalf by the related entities will be denied or revoked.

This provision allows the agency to revoke petitions – and thus, to revoke visas, *see* 8 C.F.R. § 214.2(h)(11)(iii)(A)(2) – for "related entities" who file multiple petitions for the same individual without a legitimate business need to do so. The Plaintiffs retort that the collusion attestation goes beyond just "related entities" filing repeat petitions, to now prohibit collusion more broadly between unrelated entities. *See* ECF 14 at 3-4. That is not the situation presented here, because the employers were undeniably related.[9] But even if they were not, it is hardly a substantive change in policy for the agency to clarify that "colluding" to duplicate registrations and manipulate the petition process is prohibited, even if the collaborators had no previous relationship. In adopting the final rule that established the current H-1B visa process, the agency stated (a) its intent "to check the system for duplicate registrations during the registration phase similarly to how USCIS currently checks for duplicate H-1B petition filings," (b) to "mitigate the risk that the registration

---

[9] Ironically, Penn Life and KVK do not dispute that they are "related entities," *see* Revocation Notice, Ex. 5 at 5, ECF 10-7, so it would appear that the regulations invoked here had long prohibited the type of collusion the agency alleged.

system will be flooded with frivolous registrations," and (c) to "require completion of an attestation" with "each registration."  84 Fed. Reg. 900.  Against this backdrop, the collusion attestation does not impose new, unforeseen obligations on employers, but rather assists in the enforcement of existing obligations.  *See LeadIC Design USA LLC v. United States Citizenship and Immigr. Servs.*, No. 23-6590, 2025 WL 458246, at *4 (N.D. Cal. Feb. 11, 2025) ("The final rule creating the H-1B registration program . . . would still prohibit the submission of registrations to unfairly increase the chances of selection even if the challenged portion of the attestation did not exist.").[10]

Plaintiffs also argue that even if "overlapping registrations between companies" were prohibited, a "safe harbor" existed if multiple employers had legitimate job offers for the same individual.  ECF 10-1 at 22.  But this argument fails because the collusion attestation does not undercut the safe harbor: employers must attest that they have not coordinated with others to "*unfairly* increase chances of selection."  If unrelated entities happen to register for the same foreign national, each with legitimate job offers, then they have not coordinated or colluded to "unfairly" increase their chances of selection.  Hence no new obligation is placed upon them by the attestation.

Lastly, Plaintiffs point to a form response that the agency offered during the notice and comment period for the new registration process, before the collusion attestation:

> USCIS believes the current required information is sufficient to identify the registrant and limit potential fraud and abuse of the registration system.  If USCIS determines that collecting additional information is necessary for the effective operation of the registration process, USCIS will comply with the [Paperwork

---

[10] It bears mention that the plaintiffs in *LeadIC Design* are the *companies* whose petitions were denied following the agency's determination that they had worked with one another to unfairly increase the chances of selection.  Notwithstanding the fact that *LeadIC* involved the denial (rather than revocation) of the employer's petitions, it is difficult to reconcile the posture of this case with Plaintiffs' theory, *infra*, that the agency may only revoke an assigned cap number upon a finding that the beneficiary personally committed fraud or misrepresentation in the visa process.

10

>Reduction Act] and request OMB approval of any material modifications to that information collection.

84 Fed. Reg. 900. They argue that the collusion attestation is a means of collecting "additional information" in the registration process – information about collusion – so, by its own admission, the agency needed to engage in the notice and comment process. ECF 10-1 at 16 ("Based on the agency's prior pronouncements, it viewed any changes to the information gathered with a registration, including attestations, to require compliance with [notice and comment rulemaking]."). But an attestation that employers did not collude with others to unfairly affect the registration process is not a collection of "additional information," it is a means of enforcing what was already prohibited.

Because I conclude that the collusion attestation is an interpretive rule that "only reminded affected parties of existing duties," I will grant summary judgment in favor of the agency as to Count I. *Pa. Dep't of Hum. Servs. v. United States*, 897 F.3d 497, 505 (3d Cir. 2018). The requirement simply reiterates that employers cannot coordinate with other entities for the purpose of unfairly increasing their odds of winning the visa lottery. It does not create or impose any obligation "the basic tenor of which is not already outlined in the law itself." *Dia Nav. Co. v. Pomeroy*, 34 F.3d 1255, 1264 (3d Cir. 1994); *see also LeadIC Design*, 2025 WL 458246, at *5 (the collusion attestation "is an interpretive rule because it explains a preexisting law rather than creating or imposing a new substantive obligation.").

### C. Under 8 U.S.C. § 1184(g)(3), the government may revoke an individual's cap number for fraud or misrepresentation committed by an employer.

Count III alleges that the agency violated the APA by revoking the Plaintiffs' assigned cap numbers without first finding that the Plaintiffs themselves committed fraud or misrepresentation to obtain them in violation of Section 1184(g)(3). According to Plaintiffs, these revocations

11

exceeded the agency's statutory authority and violated its own procedures. Plaintiffs also aver that revocation of cap numbers "unapologetically penalizes the innocent nonimmigrant for the actions of an alleged guilty party" – thereby "render[ing] the decision an unlawful punishment under the Eighth Amendment." ECF 24-1 at 14-15. I conclude that the statutory scheme allows the agency to revoke cap numbers for an employer's fraud and am therefore obligated to grant summary judgment in favor of the agency.

Count III rests on a straightforward question of statutory interpretation. The parties disagree on the meaning of 8 U.S.C. § 1184(g)(3), upon which the agency relied to revoke the Plaintiffs' cap numbers. This provision states in relevant part:

> If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of aliens who may be issued visas or otherwise provided such status . . . .

8 U.S.C. § 1184(g)(3).

The Plaintiffs read the statute to say that the agency may revoke an assigned cap number (*i.e.*, revoke an alien's nonimmigrant status) for fraud or misrepresentation *only if the individual* committed the fraud or misrepresentation. They maintain that if the employer committed the fraud or misrepresentation to obtain the visa, the cap number cannot be stripped from the individual. The statute's text does not specify *who* must have committed the fraud or misrepresentation, so Plaintiffs point to another statute, 8 U.S.C. § 1182(a)(6)(C)(i), which they contend provides essential context. That provision mirrors the phrase "by fraud or willfully misrepresenting a material fact" but is specific to "aliens," not their employers:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or

12

>     admission into the United States or other benefit provided under this chapter is inadmissible.

8 U.S.C. § 1182(a)(6)(C)(i).

I cannot agree with Plaintiffs' interpretation of the Code. Section 1182(a)(6)(C)(i) renders a foreign national "inadmissible" if they personally engage in fraud or misrepresentation in the visa process. This is a drastic sanction that is not equivalent to the revoked cap number provided by Section 1184(g)(3), because under that provision the foreign national is not barred but remains free to seek a new cap number. That substantial difference in outcome undermines Plaintiffs' position because it shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless. *See Narambatla v. United States Dep't of Homeland Security*, No. 23-1275, 2025 WL 754530, at *5 (W.D. Wash. Mar. 10, 2025) ("Section 1184(g)(3) does not incorporate Section 1182(a)(6)(C)(i) by reference. The statute does not cross-reference or otherwise mention Section 1182(a)(6)(C)(i). And the Court disagrees with Plaintiffs' contention that the two statutes are meant to be read together . . . The consequences of violating Section 1182(a)(6)(C)(i) are more severe than the penalty of having an H-1B cap number revoked under Section 1184(g)(3)").[11] And Plaintiffs' construction requires me to read a word into the statute: nowhere does it specify that a cap number can *only* be revoked through an individual's own fraud or misrepresentation. *See Parcha v. Cuccinelli*, No. 20-15, 2020 WL 607103, at *9 (E.D. Tex. Feb. 7, 2020) ("Under the statute's plain language, revocation authority is broadly conditioned on a finding of fraud or willful misrepresentation. Nothing in the statutory text limits the scope of that authority to wrongful conduct committed by any particular party."); *Narambatla*, 2025 WL 754530, at *4 (Section 1184(g)(3) "does not say that a cap number can

---

[11] In their motion, Plaintiffs characterize *Narambatla* as "identical" to the present matter. ECF 24-1 at 3.

13

only be revoked because of the noncitizen's fraud or misrepresentation. The statutory text centers on the issuance of an H-1B visa based on a fraudulent act or misrepresentation, not on the fraudulent actions or misrepresentation of any particular party.").[12]

Plaintiffs' interpretation would require USCIS to somehow uncouple cap numbers from their underlying visas, effectively creating a windfall opportunity to a cap number recipient where the agency later determines that the visa itself was obtained through an employer's fraud. Because H-1B visas are connected to specific employers, such a scheme is hardly intuitive and cannot be readily discerned from the statutory language. Rather, from a systemic perspective, it makes far more sense that individuals whose visas are revoked through their employers' fraud lose their cap numbers but remain free to seek new employment with new cap numbers. Indeed, that is exactly what occurred here as to Plaintiffs Manney and Solanki. *See* April 2025 Dec. of Sharon Orise, ECF 31-1 at ¶¶ 3, 5. Moreover, in practical terms, Plaintiffs' proposed remedy would seem to require an expansion in cap numbers that would violate the statute.[13]

Plaintiffs also assert that the agency's actions violated the Eighth Amendment, contending that the decision to strip them of their H-1B visas was a "retributive" rather than "remedial" action.[14] ECF 24-1 at 14-15. I must disagree. Although the beneficiaries are often blameless (as

---

[12] Plaintiffs also invoke the grammar canon, contending that the focus of Section 1184(g)(3) is the alien's status. But the statutory text does not specify who must have committed the fraud or misrepresentation. The statute "centers on the issuance of an H-1B visa" – not on the actions of any "particular party." *Narambatla*, 2025 WL 754530, at *4.

[13] For these same reasons, I disagree with Plaintiffs' assertion that their interpretation of the revocation provision is supported by Congressional intent.

[14] Plaintiffs did not explicitly assert an Eighth Amendment claim in their Complaint. Construing the Complaint broadly, however, I will briefly consider their argument. Plaintiffs rely primarily on *United States v. Schwarzbaum*, 114 F.4th 1319 (11th Cir. 2024), a case in which the Eleventh Circuit considered whether monetary civil penalties imposed by the IRS violated the Excessive Fines Clause of the Eighth Amendment. Plaintiffs here were not subject to any fines and the Court is hard pressed to discern how *Schwarzbaum* supports Plaintiffs' theory that revocation of an assigned cap number under Section 1184(g)(3) amounts to cruel and unusual punishment under the Eighth Amendment.

they were here) the ultimate goal of the revocation process is to rectify an employer's fraud, not to punish the beneficiary.  *See Parcha*, 2020 WL 607103, at *9 ("Revocation of an H–1B visa acquired through fraud or willful misrepresentation is [] remedial – it corrects the fraud enacted upon the [agency] and returns the status quo.  Just as revocation of a grant of full United States citizenship is remedial, so too is revocation of a grant of a smaller subset of those rights.").  And as discussed above, individuals whose visas are revoked due to their employers' fraud are permitted to seek new employment with new cap numbers – a procedure through which Plaintiffs Manney and Solanki have successfully secured visas.

The agency is entitled to summary judgment on Count III.

**IV.    Conclusion**

For the reasons stated above, Plaintiffs' motion for summary judgment will be denied.  Defendant's cross motion will be granted.  An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge